# IN THE OREGON TAX COURT

## MURRAY et al
*v.*
## LINCOLN HEALTH DISTRICT
(TC 2526)

Edward S. Murray appeared on behalf of plaintiffs.

David M. Gordon, Newport, represented defendant.

Decision for defendant rendered February 6, 1987.

**CARL N. BYERS, Judge.**

Plaintiffs are "interested taxpayers" who seek to have the 1986-87 tax levy of defendant declared void (see ORS 294.485(2)). Defendant is a health district authorized by ORS chapter 440, but in the process of being dissolved in accordance with the procedures found in ORS 198.920 through ORS 198.955. Plaintiffs' second amended complaint fails to state the grounds on which the tax levy should be voided,[1] but plaintiffs asserted two issues at trial. Both issues arise out of defendant's plan to dissolve.

■■ Prior to 1986, defendant suffered losses for many months. At a Board of Directors' meeting held February 26, 1986, the Board decided that its hospital was no longer a viable business. On April 9, 1986, the Board adopted Findings of Fact and a Proposed Plan for Dissolution and Liquidation pursuant to ORS 198.925. (Plaintiffs' Exhibit 1.) The Findings of Fact, dated April 1, 1986, showed assets of $1,243,000 and liabilities of $1,030,800, or net assets of $212,200. The estimated cost of dissolution (after May 20, 1986) was $88,500. (Exhibit 1.) This would have left the district with $123,700 of surplus funds, which the statute requires to be turned over to the county treasurer. ORS 198.955. An election was held on May 20, 1986, "for the purpose of submitting to the electors of the district the question of whether the district shall be dissolved, its indebtedness liquidated and its assets disposed of in accordance with the plan proposed." ORS 198.935(2). The electors approved the dissolution.

Thereupon, the district was dissolved and the Board of Directors became the Board of Trustees with the duty to liquidate the assets and pay the indebtedness of the district. ORS 198.945. However, it quickly became apparent that the Findings of Fact, estimating the value of the assets, had been overly optimistic. In preparing the "facts," it was estimated that 60 percent of the accounts receivable could be collected. In reality, most of these accounts had to be sold to a collection agency with the defendant realizing less than two percent of

---

[1] ORS 294.485(2)(b) requires the complaint to "state the facts and the grounds upon which the plaintiff contends the tax levy should be voided or modified." Recognizing that plaintiffs, acting *pro se,* are unfamiliar with the rules of pleading, the court and counsel for defendant have been lenient in this respect. Such circumstances, however, point up the dangers of taxpayers acting as their own lawyers.

the total. The hospital equipment and other personal property had to be sold at auction, bringing far less than the original estimate of its value.

Extensive efforts were made by the trustees to sell the real property, including advertising it in the Wall Street Journal and sending letters to various hospitals, health care facilities, clinics, churches and other parties whom the Board thought might be interested in the property. No offers were received. Finally, on June 25, 1986, the trustees signed a one-year listing agreement with a real estate broker for the sale of the property. The listing price was $295,000 for the hospital and $150,000 for the clinic.

A 1986-87 budget was prepared "to complete the dissolution and liquidate the Health District." (Defendant's Exhibit CC.) Revenues were forecast, including the sale of the real property and leased equipment. The estimated value of the hospital, $295,000, plus the clinic, $150,000, totaled $445,000. The Board estimated that the first six months' vacancy would decrease the value of the property by $60,000. Subtracting the cost of the sale plus a deduction for "market projections," it was estimated that the district would realize $296,500 from the sale of the real property. The sale of the leased property, estimated at 50 cents on the dollar, was expected to produce revenues of $50,000; therefore, the sale of real property and the leased equipment was estimated to bring $346,500.

This amount was reflected in the financial summary appearing in the Notice of Budget Hearing, scheduled for June 25, 1986. (Plaintiff's Exhibit 2.) The financial summary showed total resources were less than the requirements and a figure was included for "taxes necessary to balance budget." Based upon the projected shortfall, the Board of Trustees submitted a tax levy to the Lincoln County Assessor on September 8, 1986.

Plaintiffs contend that the Findings of Fact and the Plan of Dissolution submitted before the election as required by ORS 198.925 must be followed. Mr. Edward Murray, acting as spokesman for plaintiffs, argued that the plan for dissolution cannot be ignored. He asserts that the budget, issued after the election approving dissolution, must "dovetail" with the plan and that if the figures weren't consistent, the election

should not have been held. Thus, the issue as seen by Mr. Murray is whether the tax levy is consistent with the Plan of Dissolution.

Plaintiffs apparently confuse the "Findings of Fact" setting out estimated assets and liabilities of the district with the "Plan for Dissolution and Liquidation." The "plan" states:

"Creditors and other debts will be paid as rapidly as possible with cash received from tax payments, accounts receivable payments, and the sale of real and personal property of the District."

The plan then lists the order of priority in which payment will be made and ends with the statement:

"If there are not sufficient monies to satisfy all of the above payment requirements, the balance will be made up by a tax levy for the 1986-87 fiscal year." (Plaintiff's Exhibit 1.)

This "plan" remained unchanged, although the Findings of Fact were revised to reflect the events which had occurred since the Findings were prepared in April. The intervening two-and-a-half months had shown the error of the original estimate of the value of the assets. The trustees were faced with ORS 198.790 which charges that:

"No change of organization * * * shall impair the rights of any bondholder or other creditor of a district."

It was obvious that the liquidated value of those assets which had been sold plus the appraised value of the real property, which had not been sold, was less than the known liabilities. Therefore, a tax levy was required in order to satisfy the rights of the creditors and bondholders. The court finds that the tax levy was not inconsistent with the Plan of Dissolution. Plaintiffs are understandably disappointed that defendant's finances turned sour, but that alone is not cause to void a tax levy.

Plaintiffs also contend that ORS 198.955 requires that all of the assets must be disposed of before a tax levy is imposed. They allege that since the real property was not liquidated, the tax levy submitted by the trustees is illegal.[2]

---

[2] This seems a thin issue since Mr. Murray agreed at trial that the Toledo area is economically depressed and an auction of the real property would most probably result in less revenue and cost the taxpayers more than a sale over time. Despite this, he insisted that the "law requires all assets be liquidated" before a levy can be determined.

The relevant portion of ORS 198.955 provides:

"If the assets of the district are insufficient to pay the indebtedness, the board of trustees *shall* levy taxes, within the limits of the authority of the district, for the liquidation of such indebtedness." (Emphasis added.)

■     There is nothing in this language which can be interpreted to mean all assets must be sold before taxes can be levied. To the contrary, it is more subject to the interpretation that the trustees have no discretion but must levy taxes if it appears that the assets will be insufficient.

The legislature did not specify that a levy is required only if the "liquidated" assets of a district are insufficient to pay the indebtedness. The court will not add words that the legislature could have included had that been its intent.

■     Under the Uniform Trustees Powers Act, the general powers of a trustee are set out in ORS 128.009(1):

"From time of creation of the trust until final distribution of the assets of the trust, a trustee has the power to perform, without court authorization, every act which a prudent person would perform for the purposes of the trust * * *."

Would a "prudent person" have ordered a forced sale of the real property? The parties agree that such a sale would surely have resulted in a sum less than could be realized given a reasonable time to market the property. The trustees were aware that if a considerable time elapsed between dissolution and the satisfaction of indebtedness, it might trigger creditor action which could result in a forced sale. Testimony was received that in order to forestall such a possibility an estimate of the revenue that could be realized from an orderly liquidation of the real property was included in the assets of the district. Finding that this still resulted in a deficit, a tax levy was submitted to cover the remaining indebtedness. The court finds that this action was within the discretion granted the trustees and the levy so submitted and collected complied with the statutory requirements.

Having found that the tax levy is valid, judgment will be entered dismissing plaintiff's complaint, with prejudice.

Costs to the defendant.